St. Louis-San Francisco Railway Company *v.* Talley.

Opinion delivered January 19, 1931.

*E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. Westbrooke,* for appellant.

*Alexander & Cooper* and *T. J. Crowder,* for appellee.

Butler, J. The appellee, a negro man, purchased a ticket at Blytheville, Arkansas, entitling him to transportation over the appellant's line of railway to Hermondale, Missouri. Hermondale was a flag stop at which point the train was not expected to stop except for the purpose of receiving or discharging passengers. The appellee testified that, when he boarded the train of the appellant at Blytheville, he exhibited his ticket to the train porter who was standing at the door of the colored

coach. It was on an evening in January, 1926, and the weather was very inclement. The train did not stop at Hermondale, but continued on to a station called Holland, three and a half miles further, at which point the appellee debarked and walked back to Hermondale and from there to his home in the country, a distance of one and a half or two and a half miles. He testified that there was no accommodation for colored people at Holland; that it was dark and cold, misting and sleeting, and that he contracted a cold from which he suffered ten or twelve days.

The train porter was called as a witness for the appellant and did not directly dispute the statement made by the appellee that the ticket was shown him when the appellee boarded the train, and the conductor stated that it was the rule of the railway company for passengers to show their tickets when boarding a train, but that this was sometimes not enforced when the weather was inclement as it was on this occasion. The conductor stated that he did not know that any one was to be discharged at Hermondale, and that he never saw appellee's ticket until after the train had passed that point. From the testimony of the conductor and that of the porter it might have been inferred that the appellee got upon the train without notifying any of the train crew as to his destination, and thus an issue of fact arose for the jury's determination.

At the conclusion of the testimony the court instructed the jury that if, when the appellee boarded the train, he showed his ticket to an employee of the appellant stationed at the entrance of the car for the purpose of determining whether passengers getting on the train had tickets or not, the railroad company would be put on notice of the fact that it had a passenger for Hermondale, and it was its duty to stop the train at Hermondale so that the appellee might have an opportunity to disembark, and that, if with this knowledge it failed to stop the train and carried the appellee beyond his destination, it was liable in damages to the appellee. The

converse of this instruction was given, and it is conceded that the instructions were substantially correct. The jury found for the appellee, and we are of the opinion that the testimony set out above is sufficient to sustain that finding.

The amount of damages awarded, however, appears to us to be unwarranted by any substantial evidence. There was some testimony to the effect that, when the appellee discovered he was being carried beyond Hermondale and requested that the train be stopped so that he could get off, the conductor cursed and threatened to strike him, and that the conductor was drinking. All of this testimony was denied by the conductor whose testimony was corroborated by that of the train porter. But there was no claim or verdict for punitive damages, so that the verdict must rest upon the evidence tending to establish the amount of compensatory damages. The only testimony tending to establish any injury or loss of time to the appellee was his own, and that testimony, viewed in its most favorable light, is not sufficient to support the verdict of $250, the amount assessed by the jury. It tended to show that the appellee was frightened by having to walk down the track in the darkness and that he contracted a severe cold which made him sick for ten or twelve days during which he was unable to work. He had been laid off of his regular job and was without employment except helping his father in a new ground for which work he received $2 per day. We think the appellee is entitled to some compensation for his mental distress and for the ill effects occasioned by his having to walk five or six miles in the wet and cold and for the loss of his time. The damage for loss of time, however, could not have amounted to more than $25 according to appellee's own testimony. Therefore, we are of the opinion that $75 is ample to cover the other elements of damage. The judgment of the court will be reduced here to the sum of $100, and as modified will be affirmed. It is so ordered.